**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| FINALROD IP, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:20-cv-00189-JRG-RSP |
| | § | |
| ENDURANCE LIFT SOLUTIONS, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM ORDER

Before the Court is the Motion to Transfer Venue to the Western District of Texas, filed by Defendant Endurance Lift Solutions, LLC.[1] Dkt. No. 12. After consideration, the Court **DENIES** Endurance's Motion.

### I. BACKGROUND

Plaintiff Finalrod IP, LLC brought this patent infringement suit against Defendant on June 12, 2020, asserting that Endurance's Series 300 Sucker Rod and End Fitting (the "Series 300") infringes Claims 13–15 of U.S. Patent No. 10,385,625 ("the '625 Patent"). *See* Dkt. No. 1 at ¶¶ 6–9. The '625 Patent is titled "Sucker Rod Apparatus and Method" and relates generally to a novel design for a fiberglass sucker rod. It issued on August 20, 2019.

Finalrod is said to be a holding company headquartered in Big Spring, Texas, which is in the Northern District of Texas. Finalrod is the owner of the '625 Patent. *Id*. at ¶¶ 1, 6. Endurance is said to be an oil and gas company providing equipment and services in the secondary recovery of hydrocarbons. Endurance has offices throughout Texas, including the Eastern, Northern, and Western Districts. The most relevant Endurance location appears to be the one in Big Spring,

---

[1] Endurance was incorrectly identified as Endurance Lift Solutions, Inc. *See* Dkt. No. 11.

Texas, in the Northern District of Texas. Dkt. No. 12-11 at. ¶ 3. The Series 300 is developed, manufactured, and tested at the Big Spring facility. *Id*. Relevant documents concerning the development, functionality and testing of the Series 300 are also predominantly located in Big Spring. *Id*. Endurance also has locations in Midland, and in the Eastern District in Tyler and Longview. *Id*. at ¶¶ 2, 5.

On June 29, 2015, Finalrod and R2R and D, LLC d/b/a Superod (collectively, the "*Finalrod I* Plaintiffs") filed suit against John Crane, Inc., John Crane Production Solutions, Inc. and Endurance (collectively, the "*Finalrod I* Defendants"),[2] alleging that the Series 200 Sucker Rod and End Fitting (the "Series 200") infringes one of their patents.[3] *Finalrod IP, LLC et al. v. John Crane, Inc. et al.*, 7:15-cv-00097-ADA (W.D. Tex.) ("*Finalrod I*"). The *Finalrod I* Defendants counterclaimed that the *Finalrod I* Plaintiffs infringe U.S. Patent No. 6,193,431 ("the '431 Patent"). During the course of the case, the *Finalrod I* Plaintiffs amended the patents they asserted and added the Series 300 as an allegedly infringing product.[4]

*Finalrod I* originally was assigned to a judge in the Midland courthouse in the Western District of Texas. However, over the course of five years, *Finalrod I* was assigned to a total of four different judges (Judge Junell, Judge Ezra, Judge Counts, and Judge Albright), ultimately being assigned to Judge Albright in Waco, Texas on April 26, 2019.

*Finalrod I* is at an advanced stage. For instance, *Finalrod I* resulted in a *Markman* opinion drafted by a special master appointed by Judge Counts. It was even scheduled for a May 2020 trial. *See, e.g., Finalrod I* at Dkt. No. 329. However, the Court recently entered an order excluding some

---

[2] Endurance claims the John Crane entities are its predecessor-in-interest; Finalrod disputes that. *See* Dkt. No. 12 at 2; Dkt. No. 19 at 10–11.
[3] U.S. Patent No. 10,385,625 ("the '625 patent").
[4] They dropped the '162 Patent and added U.S. Patent Nos. 9,181,757 ("the '757 Patent") and 9,045,951 ("the '951 Patent"). The application that led to the '625 Patent is a continuation-in-part of the application that led to the '757 Patent, which itself is a continuation-in-part of the application that led to the '162 Patent. *See* Dkt. No. 1-1 at (63).

of the *Finalrod I* Plaintiffs' experts, causing the *Finalrod I* Plaintiffs to stipulate to a judgment of non-infringement of their asserted patents. *See* Dkt. No. 12-9. That judgment is presently being appealed to the Federal Circuit. *Finalrod IP, LLC et al. v. John Crane, Inc. et al.*, 20-1865 (Fed. Cir. 2020); *see also* Dkt. No. 12-3.

As for the remaining claims, on April 24, 2020, Judge Albright entered a Final Judgment of Non-Infringement, dismissing the *Finalrod I* Plaintiffs' counterclaims of invalidity, and staying the *Finalrod I* Defendants' counterclaim of infringement pending the resolution of the appeal. *See* Dkt. No. 12-9. *Finalrod I* is thus currently stayed indefinitely.

## II.  LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*") (citing *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003)).

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case

easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. (citation omitted).

The plaintiff's choice of venue is not a factor in this analysis. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id*. at 315. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id*.

### III. ANALYSIS

#### a. Proper Venue

Endurance seeks to transfer this case to the Western District of Texas. Finalrod does not contest that the Western District would be an appropriate district.[5] This threshold inquiry is met.

#### b. Private Interest Factors

##### i. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (citation omitted). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater

---

[5] There is some confusion about which division Endurance seeks this case to be transferred to. At times, its analysis focuses on the Midland division, where *Finalrod I* was originally filed, and other times focuses on the Waco division, where the current judge is stationed. As explained below, the correct analysis should focus on the Waco division.

weight in a transfer of venue analysis. *See* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (4th ed.) (collecting cases).

Endurance argues that this factor favors transfer because "almost all of the key witnesses reside either in or near the" Western District and the Court intends "to try the [*Finalrod I*] issues in Midland." Dkt. No. 12 at 9.

Finalrod counters that Endurance fails to identify a single non-party witness. Compounding this, Finalrod argues that Endurance has made no attempt to identify specific party witnesses or provide information concerning the importance of any witness' testimony. Dkt. No. 19 at 8–9.

Endurance admits that "Endurance's manufacturing facility—where almost all relevant Endurance witnesses and documents would be located—is in Big Spring, Texas," which is in the Northern District. Dkt. No. 12 at 5 (citing Dkt. No. 12-11 at ¶ 3). It also admits that Big Spring is 382 miles from Waco. *Id*. at 5 n.1.

It is true that the Court originally indicated that it would try *Finalrod I* in Midland. However, that case is indefinitely stayed. Endurance provides no evidence to support its assertion that the present case, if it was transferred, would be consolidated with *Finalrod I* or tried in Midland. For one, the two cases have no overlapping patents. Beyond that, the two cases are at different points in their respective schedules. This case is just beginning, while the other would have already had a trial if not for the stay. Finally, the case was being handled in Waco, which as noted is quite far from Midland. For at least these reasons, the Court cannot assume that the case will be tried in Midland.

Since Waco is so far from Big Spting, many of the witnesses would need to incur lodging expenses even if the trial was held in Waco. Beyond this, as noted by Finalrod, Endurance fails to identify specific witnesses, including non-party witnesses, in the Western District or explain their

5

importance. While Endurance argues that it has employees who work in Midland, it does not argue that they would be a part of this case. Even if it had made this showing, as party witnesses, their convenience is accorded less weight.

Endurance, accordingly, has not shown that this factor favors transfer.

### ii. Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345 (citation omitted).

Endurance admits that almost all relevant Endurance witnesses and documents would be in Big Spring, Texas. Dkt. No. 12 at 8 (citing Dkt. No. 12-11 at ¶ 3).[6] However, it argues that Big Spring is closer to the Western District and therefore, more convenient. Finalrod argues that this factor is like the one above—Endurance has not pointed to anything specifically that would make the Western District more convenient.

As an initial matter, Endurance consistently tries to combine Big Spring and Midland into one greater Big Spring/Midland area. However, the two areas are around 40 miles away from each other. Dkt. No. 12 at 5. In its experience, the Court has never considered the two areas as one. It therefore does not find it credible to lump the two areas together. This lumping further muddles the record as it is not clear whether Endurance means to refer to Big Spring, the location of Endurance's main facility and an area in the Northern District, or Midland, a town in the Western District and the place where *Finalrod I* was initially filed. This distinction is important and Endurance's loose and interchangeable use of these locations hinders its arguments.

---

[6] Endurance states that the relevant documents are "located in Midland or nearby Big Spring." *Id*. The declaration it relies on, however, states that the relevant documents "are predominantly located in Big Spring." Dkt. No. 12-11 at ¶ 3. The distinction between Midland and Big Spring is quite relevant to today's analysis. The Court does not look favorably on such inconsistencies, intentional or not, especially since they occur repeatedly in Endurance's briefing.

With that in mind, the Court finds that Endurance does not credibly point to any evidence that would be more accessible in the Western District than in the Eastern District. All the relevant Series 300 evidence it points to is in the Northern District. *See* Dkt. No. 12-11 at ¶ 3. Both Waco and Marshall are a few hundred miles away from Big Spring.

Endurance, accordingly, has not shown that this factor favors transfer.

### iii. Availability of Compulsory Process to Secure the Attendance of Witnesses

A district court has absolute subpoena power to compel a non-party witness' attendance at a deposition within 100 miles of where the witness lives or works. FED. R. CIV. P. 45(c)(1)(A).

Endurance agrees that the "Waco location and this Court's Marshall location are similarly situated for purposes of this factor" since they are both located beyond 100 miles of any likely witness. Dkt. No. 12 at 9.

Finalrod argues that while "no witnesses have been identified by Endurance, it has asserted that employees reside within the Western District, Northern District, Eastern District, and Southern District." Dkt. No. 19 at 8 (citing Dkt. No. 12-11 at ¶ 4). This Court, it argues, has compulsory process over all unidentified party witnesses because they reside within the state that this Court sits. *Id*. (citing FED. R. CIV. P. 45(c)(1)(B)(i)–(ii)). It further contends that Endurance has not identified a single potential non-party witness.

Both this Court and the Waco division have near-equal subpoena power in this case as it stands. As an initial matter, Endurance does not identify any specific witnesses, let alone give their locations. However, it does argue that relevant party witnesses would likely be in Big Spring. Big Spring is over 100 miles from both this Court and Waco, meaning neither location has an advantage in compelling the witnesses to attend. Endurance also mentions that it has physical locations in Tyler and Longview, which are within 100 miles of this Court, but not Waco.

7

Endurance describes the personnel in those locations as "unlikely to have relevant, non-duplicative knowledge or documents." Dkt. No. 12-11 at ¶ 5. The availability of the personnel in those locations is, thus, not terribly persuasive. In sum, Endurance has not shown that a single witness—party or non-party—would likely be within 100 miles of either Marshall or Waco.

Endurance, accordingly, has not shown that this factor favors transfer.

### iv. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

Endurance argues that the predominant reason why this case should be transferred to the Western District is that it would promote judicial economy, because that court "already has deep familiarity with the patents, the parties and the accused products." Dkt. No. 12 at 10. Its main contention is that *Finalrod I* overlaps with this case since the cases involve similar patents. It is also concerned about conflicting decisions between the two cases.

Finalrod argues that while that case has been progressing for five years, the current judge has only been a part of the case for a fraction of that time with the "majority of the discovery and claim construction [taking] place under Judge Counts." Dkt. No. 19 at 9. Beyond that, Finalrod contends that neither it nor Endurance are involved in any of the remaining claims in *Finalrod I* and that none of the patents overlap between the two cases. Finally, it contends *Finalrod I* is both stayed and otherwise ready for trial so no efficiencies would be gained from transferring this case.

Plaintiff has the more persuasive position. The risk of duplicative work is slight. The patents are different. The cases are different. Endurance argues that if this Court does not transfer the case to Waco, there would be a risk of duplicative work and conflicting decisions. But *Finalrod I* is currently stayed. Transferring the case will result in little, if any, efficiency gains. In order to consolidate the cases, this case would have to wait until the *Finalrod I* appeal concludes, which could easily take a year or more.  Endurance does not explain how this scenario would be more

efficient. Besides the scheduling differences, the cases are also different in scope. It is not clear at all that the cases would be consolidated even if the appeal concluded tomorrow. Thus, the risk of conflicting decisions is also low.

Beyond that, the cases do not have any overlapping patents. While the patents in the two cases may be somewhat related, it is unclear just how related the patents are to each other.[7] For instance, the asserted patent in this case, the '625 Patent, issued years after *Finalrod I* began. At a minimum, this would change the damages analysis. Differing infringement and validity reads are also highly likely. Finally, Endurance argues that since *Finalrod I* resulted in a claim construction order, it would be efficient to transfer the case. But Endurance does not point to a single claim term that was construed in *Finalrod I* that it also believes will be construed in this case. Even it did, the claim construction order was issued by a special master appointed by another judge.

Along those same lines, the parties here are different from the *Finalrod I* parties. While Endurance and Finalrod were a part of *Finalrod I*, it is unclear what interest they still have in *Finalrod I*. The court in that case issued a partial dismissal. Finalrod contends that dismissal resulted in Endurance not having any pending claims left in *Finalrod I*. Dkt. No. 19 at 10–11. If true, it would make even less sense to transfer the case to the Western District.

Endurance, accordingly, has not shown that this factor favors transfer.

    c. **Public Interest Factors**

        i. **Administrative Difficulties Flowing from Court Congestion**

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. Considerations include a proposed transferee court's "less congested docket" and "[ability] to resolve this dispute more quickly." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336

---

[7] Endurance did little to explain how similar the patents are—a significant question since continuations-in-part can have different specifications and claims, which could result in sharply different patents.

(Fed. Cir. 2009). This factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

Endurance argues this factor is neutral. However, it admits that the median time from filing to trial in civil cases in the Western District is roughly 24 months, compared to roughly 18 months in the Eastern District. Dkt. No. 12 at 12 (citing Dkt. No. 12-10). Furthermore, it does not explain how the stay in *Finalrod I* would affect the time to trial.

Endurance, accordingly, has not shown that this factor favors transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

This factor considers the interest of the locality of the chosen venue in having the case resolved there. *In re Volkswagen I*, 371 F.3d at 205–06. This consideration is based on the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.* at 206 (citation omitted).

Endurance argues that the residents of the Western District have an interest in "litigation between companies centered in the Midland/Big Spring Area." Dkt. No. 12 at 13. It further contends that it only has a limited presence in the Eastern District.

Finalrod responds that the Eastern District is a "home" for Endurance, and the Northern District is "home" for Finalrod. "Furthermore, 'near' the Western District is not **in** the Western District." Dkt. No. 19 at 14. Thus, the residents of Waco have no interest in this controversy and the Eastern District is the judicial district that does have a local interest in this dispute.

The Court has already explained that Midland and Big Spring should not be considered a single area. Endurance, admittedly, has locations in both the Eastern and Western Districts. It argues that neither would be especially relevant to this case. Finalrod, however, contends that the

Eastern District is "home" to Endurance. While Endurance somewhat disputes this, it does not explain why it has more of a localized interest in the Western District than the Eastern District.

Endurance, accordingly, has not shown that this factor favors transfer.

### iii. Familiarity of the Forum with the Law that Will Govern the Case

The parties both agree that this case involves U.S. patent law, making this factor is neutral.

### iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The parties also agree that since patent law is federal law, conflict of laws are generally not implicated. Likewise, foreign law is not at issue in this case. Thus, this factor is neutral.

In sum, Endurance has not shown that any of the private or public factors weigh in favor of transfer. Quite the opposite, in fact, as some of the factors weigh against it. Accordingly, Endurance has not shown that transfer to the Western District would be clearly more convenient.

## IV.    CONCLUSION

For the reasons set forth herein, the Court **DENIES** Endurance's Motion. Dkt. No. 12.

**SIGNED this 16th day of December, 2020.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE