IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FINALROD IP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:20-cv-00189-JRG-RSP |
| | § | |
| ENDURANCE LIFT SOLUTIONS, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Before the Court is the Motion to Exclude Certain Opinions and Testimony of Joseph C. Hetmaniak ("Motion"), filed by Endurance Lift Solutions, Inc. ("Defendant"). Dkt. No. 85. The Defendant asks the Court to strike certain opinions of Mr. Joseph C. Hetmaniak. The Motion is **DENIED**.

**I.   BACKGROUND**

On June 12, 2020, Plaintiff Finalrod IP, LLC ("Plaintiff") filed this lawsuit alleging the Defendant's 1.0" and 1.25" Series 300 sucker rod end fittings infringe Claims 13–15 of U.S. Pat. No. 10,385,625 ("'625 Patent" or "patent-in-suit"). *See generally* Dkt. No. 1. Expert discovery has closed, the Defendant now moves[1] the Court to strike certain opinions of Mr. Hetmaniak under *Daubert*.

**II.   LEGAL STANDARD**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine

---

[1] On July 29, 2021, the Defendant filed the Motion. Dkt. No. 85. On August 12, 2021, the Plaintiff filed its response. Dkt. No. 93. On August 19, 2021, the Defendant filed its reply. Dkt. No. 110. The Plaintiff did not file a sur-reply.

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under

Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 Advisory Committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### III.   ANALYSIS

#### A.   Mr. Hetmaniak's Alleged Failure to Measure Each Accused Product

The Defendant argues Mr. Hetmaniak's infringement opinion, with respect to the 1.0" Series 300 end fitting, should be precluded because he did not provide a specific opinion as to that specific accused product. Dkt. No. 85 at 10[2] ("Mr. Hetmaniak only provided purported measurements for the 1.25" Series 300 end fitting . . . [a]s such, Mr. Hetmaniak's report provides absolutely no basis for his conclusory opinion of infringement as to the 1" Series 300 end fitting.").

The Plaintiff counters that pursuant to the results of a finite element analysis ("FEA") Mr. Hetmaniak concluded that "the scalable differences in the Series 1.0" and the Series 300 1.25" will not affect the FEA results." Hetmaniak's June, 24, 2021 Report ("Hetmaniak Report") ¶ 107.

Mr. Hetmaniak's opinion that his analysis of the 1.25" Series 300 end fitting is representative for the 1.0" Series 300 end fitting is sufficiently supported. *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*, 259 F. Supp. 3d 530, 542–43 (E.D. Tex. 2017) (Use of representative products is permissible under Federal Circuit precedent, Plaintiff need only present sufficient evidence that the representative product is indeed representative) (*rev'd* on

---

[2] Citations are to document numbers and page numbers assigned through ECF.

other grounds). Mr. Hetmaniak opines that the 1.0" and 1.25" models are to scale and any length difference in the 1.25" model would be reflected in the 1.0" model. Hetmaniak Report ¶ 107 Mr. Hetmaniak's opinion is supported by his analysis of the Series 300 Production Drawings for the 1.0" and 1.25" models. Hetmaniak Report Ex. 7, ¶¶ 68–71, 107. Whether the 1.0" Series 300 model is actually to scale of the "1.25 model is a question that goes to the weight of Mr. Hetmaniak's opinion not its admissibility.

### B.   Mr. Hetmaniak's Measurement of Two Edges

Defendant argues that "the plain language of the Trailing Edge Limitation requires that each trailing edge must get longer from the open end to the closed end." Dkt. No. 85 at 11. Defendant submits, that with its understanding of the claims in mind, Mr. Hetmaniak was required to show that each trailing edge in the accused product was longer than the previous trailing edge.

Plaintiff responds that Defendants are "merely disguising a claim construction issue within a *Daubert* motion." Dkt. No. 93 at 4. Plaintiff argues that the claims recite a "plurality" and that the term "plurality" means "at least two." *Id*. (citing *York Products, Inc. v. Central Tractor Farm & Family Center, et al.*, 99 F.3d 1568 (Fed. Cir. 1996)). Claim 13 of the '625 Patent recites:

> An end fitting for a sucker rod comprising:
>> a body comprising a cavity for receiving an epoxy, the cavity comprising an interior surface, a closed end, and an open end, wherein the interior surface of said cavity comprises a plurality of leading edges, a plurality of trailing edges, and a plurality of vertices therebetween, wherein each of the plurality of leading edges diverge away from the sucker rod from the open end to the closed end, wherein each of the plurality of trailing edges converge towards the sucker rod from the open end to the closed end,
>> wherein a respective length of the respective plurality of leading edges decreases from the open end to the closed end, and wherein a respective length of the respective plurality of trailing edges increases from the open end to the closed end.

When the parties have a "fundamental dispute regarding the scope of a claim term," the Court has the duty to resolve that dispute. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,

521 F.3d 1351, 1362-63 (Fed. Cir. 2008). The Defendant argues that "while an end fitting need not have more than two wedges, under the plain language of the claim, each trailing edge that is present in the accused product must converge towards the sucker rod and increase from the open end to the closed one." Dkt. No. 110 at 5 (emphasis omitted). This goes against the well understood meaning of "plurality." *See York Products*, 99 F.3d at 1575 ("[Plurality] means, simply, 'the state of being plural.' Thus, this term requires only *at least two* . . . .") (emphasis added) (internal citation omitted). The Court construes the term "plurality of" to mean "at least two." Thus, Mr. Hetmaniak need only show that the length of the trailing edge closer to the open end "increases" when compared to the leading edge closer to the closed end. Mr. Hetmaniak picked two trailing edges and measured the lengths of the trailing edges, this is not "arbitrary" as the Defendants submit it is within the Court's claim construction.[3] The Court's construction is sufficient to resolve the claim construction dispute, and any remaining dispute presents infringement issues for the finder of fact rather than any legal question for claim construction. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) ("[A] sound claim construction need not always purge every shred of ambiguity. The resolution of some line-drawing problems . . . is properly left to the trier of fact.") (citing *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998)).

### C. Mr. Hetmaniak's Methodology to Obtain Measurements

Defendant contends Mr. Hetmaniak's method of measuring the trailing edges does not pass *Daubert* muster. Dkt. No. 85 at 13 ("[Mr. Hetmaniak] chose to rely upon a convoluted approach using so-called "baseline" measurements for his analysis, wherein "all of the dimensions [were] a reference to the same point," which he then also truncated to only three decimal places.").

---

[3] Defendant also presents an issue regarding "how" these trailing edge "measurements could possibly relate to the Trailing Edge Limitation." Dkt. No. 85 at 11. In view of the Court's additional construction, the issue of how has been addressed.

5

Defendant contends that the "baseline" measurements are inherently flawed and are not a valid method of measurement. *See id*.

Plaintiff responds that "baseline measurements are the common way to dimension production drawings for end fittings. Endurance uses baseline measurements on its production drawings of the Series 300 end fitting . . . ." Dkt. No. 93 at 5 (citing Dkt. No. 103-3 at 2–4).

Use of baseline measurements is not inherently unreliable. Both experts rely on the scalar length difference between two points to draw conclusions regarding infringement or non-infringement. *Compare* Hetmaniak Report ¶ 101 *with* Dkt. No. 85-4 ¶ 40. The difference between the two approaches is that Mr. Hetmaniak takes a measurement from the opening end to the start of the leading edge and subtracts that from the measurement from the opening end to the end of the trailing edge, this results in the scalar difference between the vertex and the end of the trailing edge. Defendants state that this method is "convoluted." It is actually quite simple, a person having a basic understanding of subtraction can understand the baseline measurement method. Defendants do not articulate any other reason why this method is incorrect or inaccurate.

Defendant also criticizes Mr. Hetmaniak's measurements because they are only carried to the thousandths place not the hundred thousandths place. Dkt. No. 85 at 12–13. This is a topic for vigorous cross-examination, but it does not implicate the admissibility of Mr. Hetmaniak's opinion—merely its weight.

IV.   **CONCLUSION**

Accordingly, the motion (Dkt. No. 85) is **DENIED**.

**SIGNED this 11th day of October, 2021.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE