IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FINALROD IP, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:20-cv-00189-JRG-RSP |
| | § | |
| ENDURANCE LIFT SOLUTIONS, INC., | § | |
| | § | |
| *Defendant*. | § | |

### **MEMORANDUM ORDER**

Before the Court is the Motion to Exclude, or in the Alternative to Strike, the Opinions and Testimony of Justin R. Blok, filed by Defendant Endurance Lift Solutions, Inc. Dkt. No. 84. Defendant moves the Court to exclude certain opinions of Mr. Justin R. Blok's damages report. *See id*. at 4.[1]

**I.    BACKGROUND**

On June 24, 2021, Plaintiff Finalrod IP, LLC served Mr. Blok's damages report on the Defendant. *Id*. at 6. Mr. Blok calculated a reasonable royalty of $2.9 million basing his estimate on his calculations that the parties would have agreed upon a $31.36 royalty for each accused system. Dkt. No. 84-2 ¶ 8. During the preparation of Mr. Blok's expert report, he called Mr. Joseph C. Hetmaniak (the Plaintiff's technical expert) to aid in the preparation of the damages report. *See e.g.* Dkt. No. 84-3 at 6. Mr. Blok relies cites and relies upon his conversation with Mr. Hetmaniak to support several opinions and conclusions in the damages expert report. *See e.g.* Dkt. No. 84-2 at n. 37.

---

[1] Citations are to the document numbers and page numbers assigned through ECF.

1

## II.     LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law)

("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III.   ANALYSIS

Defendant argues that certain opinions of Mr. Blok should be stricken because the statements attributed to Mr. Hetmaniak are either not supported or not disclosed in Mr. Hetmaniak's report. Dkt. No. 84 at 8.

As an initial matter, it bears noting that Mr. Blok is permitted to rely on "a technical expert in the industry to help form [his] damages opinion." *Personalized Media Communs., LLC v. Apple, Inc.*, No. 2:15-cv-1366-JRG-RSP, 2021 U.S. Dist. LEXIS 31667, *10, 2021 WL 662237 (E.D. Tex. Feb. 20, 2021) (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014)). However, this is not carte blanche for a damages expert to introduce undisclosed opinions of the technical expert. *See Cedillo v. Sec'y of HHS*, 617 F.3d 1328, 1341–42 (Fed. Cir. 2010); *see also ClearValue Inc., v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1302 (Fed. Cir. 2009).

### A.   Apportionment of Damages based on Claimed Invention

In Mr. Blok's expert report, he states:

> According to Mr. Hetmaniak, at least the following benefits touted above are partially or fully attributable to the teachings of the '625 Patent: increased flow area by 47%; reduced pressure drop across end fittings by more than 60%; lower flow turbulence = more effective chemical program; lower stress loading on the rod body; and hybrid 12-wedge design yields increased balance of loading between the wedges.

Dkt. No. 84-2 ¶ 22. Defendant argues that Mr. Hetmaniak never explicitly stated the above opinion in his report. *See* Dkt. No. 84 at 9. Defendant does, however, concede that "[t]he closest Mr. Hetmaniak comes to discussing the issue referenced by Mr. Blok is paragraph 120 of the Hetmaniak report . . . ." *Id.* at 10.

The above opinion is adequately supported by Mr. Blok's own report as well as Mr. Hetmaniak's report. *See* Dkt. No. 84-2 ¶¶ 64–67. In particular, paragraph 67 of Mr. Blok's report cites Defendant's own marketing documents in support of the benefits at issue (reproduced below):

**Increased flow area to boost production**

- Increased flow area by 47%
- Reduced pressure drop across end fittings by more than 60%
- Lower flow turbulence = more effective chemical program
- Lower stress loading on the rod body
- Hybrid 12-wedge design yields increased balance of loading between the wedges.
- 50,000 psi working strength
- OD – 1.8125"
- Standard 7/8" full size couplings; no diameter step between coupling and end fitting

*Id.* ¶ 67 (citing END0000015; END0000003–010 at 004). Though Mr. Blok cited Mr. Hetmaniak as the support for the sections that Defendant seeks to strike, Mr. Blok clearly obtained this information, not only from Mr. Hetmaniak, but from other corroborating sources.

Further, these opinions were adequately supported in Mr. Hetmaniak's report as well. *See* Hetmaniak June 24, 2021 Report ("Hetmaniak Report") ¶¶ 115–122, Ex. 11. Mr. Hetmaniak relied extensively on Exhibit 11 throughout his report. This document appears to have been created by Defendant and specifically lists the benefits of using the Series 300 end fittings. *Id.* These benefits

4

are the subject that Defendant now seeks to exclude. Mr. Blok may rely on statements made by Mr. Hetmaniak about exhibits and other documents that he properly disclosed and relied upon in his expert report.

Defendant also argues that paragraphs 27 and 72 of Mr. Blok's report contain information that was not properly disclosed in Mr. Hetmaniak's report. However, Mr. Hetmaniak both disclosed this information and communicated that information to Mr. Blok. *See id*. ¶¶ 49, 52, 115–22. The phrasing in Mr. Blok's report is not *verbatim* the phrasing used in Hetmaniak Report paragraphs 49, 52, and 115–22, but Mr. Hetmaniak's report sufficiently disclosed these opinions, and thus exclusion of this part of Mr. Blok's report is not appropriate.

### B. Non-Infringing Alternatives

In Mr. Blok's expert report, he cites his private conversation with Mr. Hetmaniak to conclude that there are no non-infringing alternatives, including the Series 200 end fittings. *See* Dkt. No. 84-2 ¶ 29. Defendant, argues that Mr. Hetmaniak's report "does not identify any product other than the Series 300 as practicing the '625 Patent, much less does it explain why other alternatives (a) would practice the '625 patent, or (b) would not be adequate substitutes." Dkt. No. 84 at 8. The Defendant, in particular, points out that "Mr. Hetmaniak's report does not contain any discussion of whether the Series 200 end fittings (a different product developed by the Defendant) practices the '625 patent or would be a viable non-infringing alternative." *Id*. at 9.

Plaintiff does not respond to the Defendant's allegation that Mr. Hetmaniak's report does not include an opinion on the infringing or non-infringing nature of the Series 200 end fitting (or any other alternative product). The Plaintiff only explains that "Mr. Blok's conclusion that there were no available, acceptable, non-infringing alternatives to the claimed teachings of the '625 Patent at the time of the hypothetical negotiation was based on the information he received from

Mr. Hetmaniak during their phone interview . . . ." Dkt. No. 92 at 4.  The Court has examined Mr. Hetmaniak's reports (Dkt. Nos. 84-4 and 84-5) and finds no discussion of non-infringing alternatives or the Series 200 product.  Defendant has shown that the normal way of dealing with this issue—deposing the technical expert about the conversation with the damages expert—did not work in this case because Mr. Hetmaniak had no recollection of that part of their conversation.  Importantly, even Mr. Blok could not recall how Mr. Hetmaniak articulated the conclusions Blok attributed to him.  There are cases where this problem can be mitigated by depositions or supplemental reports, but this is not one of them.

Mr. Blok is precluded from offering statements that Mr. Hetmaniak opined and concluded that the Series 200 end fitting is not a non-infringing alternative to the accused product, or that there are no non-infringing alternatives. Mr. Blok may have received this opinion from Mr. Hetmaniak, but Mr. Hetmaniak never disclosed that opinion or disclosed any analysis to properly support that opinion. Fed. R. Civ. P. 37(c).  He may, of course, testify that he has not been informed of any acceptable non-infringing alternatives, if that is the case.  Accordingly, ¶¶ 29, 47, 78, and 8th–9th bullet of ¶ 106 of Mr. Blok's report (Dkt. No. 84-2) are **STRICKEN**.

### C. Comparability of Technology in Third-Party Licenses

Defendant argues that the Court should exclude Mr. Blok's opinions regarding the June 19, 1998 license agreement between Toups Technology Licensing Incorporated and Lift-Pump, LLC ("Toups Agreement"). Dkt. No. 84 at 12. Defendant asserts that the Toups Agreement was never "discussed in the Hetmaniak Report, nor does the report contain any explanation of why and how Mr. Hetmaniak supposedly determined the licensed technology was comparable to and/or more valuable than the technology in the '625 Patent." *Id*. The Defendant argues it is "proper to exclude a damages analysis that relies on licenses for technology that lacks sufficient comparability to the

6

technology that is the subject of the expert report." *Id.* at 17 (citing *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-1015-JRG-RSP, 2017 WL 2607882, *3 (E.D. Tex. May 25, 2017)).

The Plaintiff, again, does not contest that Mr. Hetmaniak did not disclose technological comparability opinions of the Toups Agreement. The Plaintiff argues that disclosure in Mr. Blok's report and in Mr. Hetmaniak's deposition is sufficient. Dkt. No. 92 at 9–10.

It is entirely customary for damages experts to consult the technical experts concerning the technical comparability of licenses. The issue regarding the Toups Agreement is not particularly complex and was adequately explored during the depositions of both Blok and Hetmaniak. Defendant has not shown that exclusion of that portion of Mr. Blok's report is justified.

### IV. CONCLUSION

The Court **STRIKES** ¶¶ 29, 47, 78, and 8th–9th bullet of ¶ 106, of Mr. Blok's report (Dkt. No. 84-2). The motion is otherwise denied.

SIGNED this 20th day of October, 2021.

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE