IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FINALROD IP, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:20-cv-00189-JRG-RSP |
| | § | |
| ENDURANCE LIFT SOLUTIONS, INC., | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM ORDER

Before the Court is the Motion to Strike the Expert Report of W. Todd Schoettelkotte and to Exclude his Expert Opinions and Testimony, filed by Plaintiff Finalrod IP, LLC. Dkt. No. 87-2. Plaintiff moves the Court to exclude or strike certain opinions of Mr. W. Todd Schoettelkotte's damages report. *See id*. at 2.[1] The Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

### I.   BACKGROUND

On June 12, 2020, Plaintiff filed this lawsuit alleging the Defendant's Series 300 sucker rod end fittings infringe Claims 13–15 of U.S. Pat. No. 10,385,625 ("'625 Patent" or "patent-in-suit"). *See generally* Dkt. No. 1. Expert discovery has closed, Plaintiff now moves[2] the Court to strike certain opinions of Mr. Schoettelkotte, Defendant's damages expert, under *Daubert*. *See* Dkt. No. 87-2 at 1–2.

---

[1] Citations are to the document numbers and page numbers assigned through ECF.
[2] On July 29, 2021, the Plaintiff filed the Motion. Dkt. No. 87-2. On August 12, 2021, the Defendant filed its response. Dkt. No. 101. The Plaintiff did not file a reply.

## II. LEGAL STANDARDS

### A. *Daubert*

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 instructs a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro*

*Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### B. Motion to Strike

Federal Rule of Civil Procedure 37(c)(1) provides, "If a party fails to provide information. . . as required by Rule 26(a) or (e), the party is not allowed to use that information. . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." To determine whether a failure to disclose was harmless, courts in the Fifth Circuit consider a number of factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004) (quoting *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)). The determination of whether to exclude evidence is within the discretion of the district court. *Id*. at 563.

### III. ANALYSIS[3]

#### A. Mr. Schoettelkotte's Reliance on Expert Report

Mr. Schoettelkotte permissibly relied on the expert report in this case. Plaintiff's dispute with Mr. Schoettelkotte's report appears to be that it relies on a technical expert's report for this case and that Plaintiff finds this report objectionable. *See* Dkt. No. 87-2 at 4–5. The issues that the Plaintiff finds objectionable have been previously discussed by the Court. Dkt. Nos. 133, 134, 144. Mr. Schoettelkotte properly relied on the technical expert's report in this case, rather than a different report in another case. *See* Dkt. No. 87-2 at 5 ("The Appendix to Schoettelkotte's Present Report lists only the Present Report of Crichlow as something he considered for his own Present Report.").

#### B. Mr. Schoettelkotte's Reliance on Non-Infringing Alternatives Opinions

As Plaintiff points out, Mr. Schoettelkotte has taken the position that since the Series 200 end fittings are unaccused they are also non-infringing. See Dkt. No. 87-6 at 4–5 ("Q: And if it could be established that the Series 200, if it was being manufactured still today, would infringe the '625 Patent, how would that affect your opinion? . . . A: Well, to the extent that it was determined that it was accused of infringement, then it would not be a non-infringing substitute. Other than that, it wouldn't have or bear on my analysis."). Mr. Schoettelkotte admitted that merely accusing the Series 200 end fittings is sufficient for him to reverse his position, at least with respect to the Series 200 end fittings. In other words, Mr. Schoettelkotte's statement confirms that the opinion that the Series 200 end fitting are non-infringing alternatives is not grounded in the technical expert's opinion (Dr. Critchlow), rather it is predicated on Plaintiff's decision to not

---

[3] Many of the issues raised by the Plaintiff in the Motion have been previously discussed and denied by the Court. Dkt. Nos. 133, 134, 144. The Court need not address these issues again. The Court will limit its analysis to new issues raised in this Motion.

4

pursue infringement claims against the Series 200 end fitting. And as the *Acceleration Bay* Court discussed, this is an impermissible assumption for a damages expert. 2019 WL 4194060, at *8.

Review of Mr. Schoettelkotte's expert report paragraphs 59, 60, and 69 and Dr. Henry Critchlow's Non-Infringement Report (Dkt. No. 87-8) shows that Mr. Schoettelkotte's assertion that the Series 200 end fitting is a non-infringing alternative is without proper support. *See Acceleration Bay LLC v. Activision Blizzard Inc.*, No. 1:16-cv-00453-RGA, 2019 WL 4194060, at *8 (D. Del. Sep. 4, 2019), reconsideration denied, No. 1:16-CV-00453-RGA, 2020 WL 474650 (D. Del. Jan. 29, 2020) ("Ms. Lawton's assumption of non-infringement of earlier versions of the accused products is baseless and must be excluded. Defendant argues that Ms. Lawton does not opine on non-infringing alternatives, but, rather, assumes non-infringement based on Plaintiff's decision not to pursue infringement claims from prior to 2012. It is undisputed that none of its technical experts have opined that the earlier games are non-infringing. Thus, the only support for the conclusion that the earlier versions of the games are non-infringing alternative is Ms. Lawton's assumption. A damages' expert's assumption is not sufficient to support a damages opinion based on a particular non-infringing alternative." (internal citations omitted)).

Furthermore, each section where Mr. Schoettelkotte states that the Series 200 end fittings are non-infringing lacks citation to any expert technical opinion.[4] Without support from the relevant technical expert Mr. Schoettelkotte has no basis to opine what may or may not be a non-infringing alternative. *Id*. In view of this, the Court must exclude any testimony or opinion from Mr. Schoettelkotte that suggests that the Series 200 end fittings do not practice the '625 Patent.[5]

---

[4] Although the entire universe of expert reports that have been served in this case are not in the record, or at least not readily accessible to the Court, Dr. Critchlow's Non-Infringement Report (Dkt. No. 87-8) does not appear to mention the Series 200 end fittings or other allegedly non-infringing nature.

[5] The Court excluded Mr. Blok's opinion for a somewhat related reason, namely that the damages experts cannot opine on what is or is not a non-infringing alternative without support from the technical expert's report or other competent evidence. *See* Dkt. No. 144 at 5–6.

### C. Mr. Schoettelkotte's Georgia-Pacific Factor 11 Analysis

Plaintiff contends Mr. Schoettelkotte's *Georgia-Pacific* factor 11 analysis is unreliable because Mr. Schoettelkotte allegedly excluded the Series 300 high flow sucker rods in his *Georgia-Pacific* factor 13 apportionment analysis. Dkt. No. 87-2 at 9–11 (citing Dkt. No. 87-5 ¶ 57 n.60). Defendant counters that Plaintiff misunderstands Mr. Schoettelkotte's report. *See* Dkt. No. 101 at 14. Defendant explains that the Plaintiff is mistaken in their belief that Mr. Schoettelkotte excluded Series 300 high flow sucker rods from his factor 11 analysis. *Id*. In particular, the Defendant points out that "Mr. Schoettelkotte's calculation of the number of units sold and subject to the royalty—which appears in Schedule 4.1A of his report and is referenced in his discussion of Georgia-Pacific Factor 11 (on page 15)—expressly includes 'High Flow Rods.'" *Id*.

Plaintiff appears to argue, based on a footnote in a different section of Mr. Schoettelkotte's report, that Mr. Schoettelkotte did not consider the Series 300 high flow sucker rods in his factor 11 analysis—but should have. Dkt. No. 87-2 at 11 ("In accord with *Georgia Pacific* Factor 11, the facts about the 'Series 300 high flow fiberglass sucker rods' (all of them) are part of the ***extent*** to which Endurance has made use of the patented invention; and evidence about the 'Series 300' rods (all of them, including the Series 300 high flow rods) is probative of the value of that use."). Plaintiff alleges the footnote in factor 13 is proof of Mr. Schoettelkotte's decision to exclude the Series 300 high flow sucker rods from his factor 11 analysis. *See id*.

Plaintiff's argument is unpersuasive. Mr. Schoettelkotte clearly expressed that he considered Series 300 high flow sucker rods as relevant for his factor 11 analysis. *Id*. (The footnote points-out that Mr. Schoettelkotte considered the Series 300 and Series 300 high flow together in his factor 11 analysis). Further, as the Defendant pointed out, the Schedule 4.1A referenced in factor 11 includes calculations based on the Series 300 high flow rods. *Compare* Dkt. No. 87-5 ¶ 40 *with* Dkt. No. 87-5 at 46.

To the extent, Plaintiff contends that footnote 60 casts doubt as to whether Mr. Schoettelkotte truly considered the Series 300 high flow rods, that goes to the weight and creditability of Mr. Schoettelkotte's testimony not its admissibility.

### D. Mr. Schoettelkotte's Updated Sales Figures

The Plaintiff argues Mr. Schoettelkotte relied on certain undisclosed documents when rendering his damages opinion. Dkt. No. 87-2 at 12. Plaintiff also indicates that this information was produced on July 12, 2021. *Id*. Defendant responds that the undisclosed documents are merely updated sales data. Dkt. No. 101 at 17. Defendant also states that it "does not object to Mr. Blok updating his calculation to address these new sales figures." *Id*. n.7.

The Court will not exclude Mr. Schoettelkotte's opinion based on the updated sales information, Plaintiff is granted leave to supplement Mr. Blok's damages report ***only*** to reflect the updated sales data.

### IV.   CONCLUSION

Accordingly, the Court **EXCLUDES** any testimony or opinion from Mr. Schoettelkotte that suggests that the Series 200 end fittings are non-infringing alternatives. Plaintiff is permitted to supplement Mr. Blok's expert report with the updated sales information that Mr. Schoettelkotte relied upon.

**SIGNED this 22nd day of October, 2021.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE